UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| United States of America<br><br>*v.*<br><br>Hector Natal and Hector Morales | Criminal No. 3:12cr164 (JBA)<br><br>January 2, 2013 |

**RULING ON MOTION FOR SEVERANCE**

Defendant Hector Morales moves [Doc. # 48] to sever his trial from that of his co-defendant, Hector Natal. For the reasons that follow, Mr. Morales's motion to sever is denied.

**I.     Background**

Defendants Morales and Natal, who are father and son, respectively, are both charged in the Superseding Indictment [Doc. # 47] with conspiracy to distribute and to possess with intent to distribute narcotics, in violation of 21 U.S.C. § 846 (Count One); with witness tampering and aiding and abetting, under 18 U.S.C. § 1512(b)(1-2) (Count Six); and with conspiracy to tamper with witnesses, in violation of 18 U.S.C. § 1512(k) (Count Seven). Defendant Morales is charged with destruction and concealment of evidence, in violation of 18 U.S.C. § 1519 (Count Eight). Defendant Natal is charged with attempted arson and with three counts of arson resulting in death, under 18 U.S.C. § 844(i) (Counts Two through Five).  Defendant Morales has not been charged with arson or attempted arson or any arson–related counts.

**II.    Discussion**

Mr. Morales does not challenge the validity of Defendants' joinder under Federal Rule of Criminal Procedure 8(b), as counsel for Mr. Morales confirmed at a pretrial

conference held on December 5, 2012.  Rather, Mr. Morales seeks relief from prejudicial joinder pursuant to Federal Rule of Criminal Procedure 14(a).

Rule 14(a)(1) states that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). When co-defendants are indicted together, "there is a preference in the federal system for joint trials," which "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal quotations omitted).  A showing that a joint trial will cause prejudice does not require severance; rather, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id*. at 538.   Severance should be granted only if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539.

Mr. Morales asserts that joinder would be prejudicial for two reasons: (1) a joint trial raises the possibility of spillover evidence that would otherwise be inadmissible were he tried alone; (2) a joint proceeding would be complex and raise a "real risk that the jury will confuse the issues."[1] (*See* Def.'s Mem. of Law [Doc. # 48-1] at 4.)

---

[1] Mr. Morales does not contend that he and his co-defendant have mutually antagonistic defenses or that a joint trial will deny him exculpatory evidence that otherwise would be available to him in a separate trial.  Mr. Morales does raise the general specter of a *Bruton* problem, *see generally Bruton v. United States*, 391 U.S. 123, 127 (1968), arguing that Mr. Morales's Sixth Amendment right to confront witnesses may be infringed. (*See* Def.'s Mem. of Law at 4.) However, Mr. Morales does not point to any statement by Mr. Natal that specifically incriminates Mr. Morales.  His *Bruton* argument is therefore without merit. *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("[T]he

### 1. Prejudicial Spillover Evidence

The "typical spillover claim is that evidence admissible against only one defendant is prejudicial to all defendants" and that individual trials would avoid that prejudice. *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992). However, "the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *United States v. Rittweger*, 524 F.3d 171, 179 (2d Cir. 2008) (internal quotation marks omitted). To succeed on his severance motion on the basis of prejudicial spillover evidence, Mr. Morales "must show that the prejudice to him from joinder is sufficiently severe to outweigh the judicial economy that would be realized by avoiding multiple lengthy trials." *United States v. Walker*, 142 F.3d 103, 110 (2d Cir. 1998). Indeed, Mr. Morales must demonstrate that the spillover will be so prejudicial as to constitute a "miscarriage of justice." *United States v. Locascio*, 6 F.3d 924, 947 (2d Cir. 1993).

Mr. Morales raises the general prospect of spillover evidence but identifies only two specific pieces of evidence that would, in his view, be admissible in the joint proceeding but inadmissible in a severed trial: a recorded conversation between Natal and a cooperating witness in which Natal appears to take responsibility for the arson (*see* Def.'s Mem. of Law at 4) and Natal's guilty plea to a federal drug charge stemming from conduct related to the charged conspiracy (*see* Def.'s Reply [Doc. # 63] at 1).

Mr. Morales does not explain how these submissions would be inadmissible in a severed trial. "When a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is

---

Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence.").

3

admissible against the defendant." *United States v. Salameh*, 152 F.3d 88, 111 (2d Cir. 1998). The Government alleged that Mr. Natal participated in the arson and that this constituted an overt act in furtherance of the conspiracy to distribute and to possess with intent to distribute narcotics. (*See* Superseding Indictment [Doc. # 47] ¶ 9.d.) Both Mr. Natal's guilty plea to a drug charge which Mr. Morales acknowledges "stems from conduct related to the instant conspiracy" (*see* Def.'s Reply at 1) and Mr. Natal's recorded conversation in which he admits to burning down "the crib . . . on Wolcott" because he was owed "bread" (*see* Gov't's Opp'n [Doc. # 53] at 19) would likely be admissible as evidence to prove the existence of the narcotics conspiracy, even though both pieces of evidence relate to acts committed by Mr. Natal rather than Mr. Morales. *See Salameh*, 152 F.3d at 111 ("Where a defendant is a member of a conspiracy, all the evidence admitted to prove that conspiracy, even evidence relating to acts committed by co-defendants, is admissible against the defendant." (citing *United States v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988))); *cf. United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992) ("Proof of these elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.")

Even if Defendant had shown that actual prejudice would result from a joint trial, severance would be inappropriate at this juncture because Defendant has not shown that such prejudice would be "sufficiently severe" to justify the significant expenditures of judicial resources implicated by separate trials. *See Walker*, 142 F.3d at 110; *see also United States v. Sampson*, 385 F.3d 183, 190 (2d Cir. 2004) ('[I]n order to prevail, the

defendant must show not simply some prejudice but *substantial* prejudice." (emphasis in original)). A court is required to sever trials only when the prejudice will be sufficiently severe as to constitute a "miscarriage of justice." *See Rittweger*, 524 F.3d at 179. At this stage, the Court anticipates that any prejudice to Mr. Morales likely can be mitigated by limiting instructions, *see Zafiro*, 506 U.S. at 539 ("[L]ess drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."), and concludes that Defendant has not carried his heavy burden of demonstrating that a joint trial will result in a "miscarriage of justice," *see Rittweger*, 524 F.3d at 179.

        2.    *Complexity*

Defendant argues that the "complexity of this case carries a real risk that the jury will confuse the issues and that Mr. Morales will be found guilty simply because of his familial relationship with his son" and that "with longer trials, the jury is more likely to have a difficult time recalling and sorting out the evidence as it pertains to each defendant." (Def.'s Mem. of Law at 4.) This contention lacks merit. The case—with only two defendants and eight counts—is not of unusual complexity. Nor will the joint trial be unusually long; the government estimates that its case-in-chief in a joint trial will take two weeks (*see* Gov't's Opp'n [Doc. # 53] at 10), which is below the length of time that would implicate due process concerns. *See United States v. Losada*, 674 F.2d 167, 171 (2d Cir. 1982) (noting that a three-week trial was not "exceptionally long" and was not prejudicial); *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992) (rejecting claim that a sixteen-month trial of twenty-four defendants on a seventy-eight count indictment was so lengthy and complex as to constitute a denial of due process). Finally, the Second Circuit has permitted joint trials of family members on charges of conspiracy. *See, e.g.*,

*United States v. Spinelli*, 352 F.3d 48 (2d Cir. 2003) (joint trial of brothers for conspiracy); *United States v. Jones*, 269 Fed. App'x 179, 180 (2d Cir. 2008) (same).

### III.   Conclusion

For the reasons stated above, Defendant Morales's Motion for Severance [Doc. # 48] is DENIED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 2nd day of January, 2013.