UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | Crim. No. 3:12-cr-164 (JBA) |
| *v.* | |
| HECTOR NATAL and HECTOR MORALES | October 21, 2014 |

**RULING ON UNITED STATES' MOTION FOR RECONSIDERATION**

As detailed in the Court's Ruling [Doc. # 257] on Post-Trial Motions, on April 18, 2013, Hector Natal and Hector Morales were convicted of, among other crimes, Conspiracy to Distribute and to Possess with Intent to Distribute Narcotics in violation of 21 U.S.C. § 846 (Count One) and Defendant Hector Morales was individually convicted of, among other crimes, Accessory After the Fact to Arson Resulting in Death in violation of 18 U.S.C. § 3 (Counts Six, Seven, and Eight). Subsequently, Mr. Morales moved [Doc. # 211] for a New Trial. The Court granted [Doc. # 257] his motion in part, ordering a new trial as to Counts Six, Seven, and Eight. The Government now moves [Doc. # 260] for reconsideration of that Order. For the following reasons, the Government's Motion for Reconsideration is granted.

I.    **Background**

On August 7, 2014, this Court granted Mr. Morales's motion for a new trial with respect to Counts Six, Seven, and Eight, which charged him as an accessory after the fact to an arson committed by Mr. Natal. The Court reasoned that a new trial was warranted because "there [was] a significant risk that the jury [impermissibly] relied on Mr. Natal's

confession[s] in reaching its verdict against Mr. Morales." (Ruling Post-Trial Mots. [Doc. # 257] at 26.) These confessions included the following three exchanges:

> Vega: Yo, so how you burn that crib, my nigga?
> Natal: What you mean?
> Vega: Nigga, the crib right there on Wolcott.
> Natal: Them niggas owe me bread, nigga.
> Vega: You wilin' son, how you do that shit?
> Natal: What you mean, you wilin' right now talkin like that.
> Vega: Nigga, how you do that shit nigga? Just tell me nigga, cause niggas rolled up on me wilin' son like for real bro that shit ain't real, my nigga, I'm out here trappin for niggas and shit, y'all gonna get me locked up and shot up and shit. How the fuck y'all niggas do that shit, who you did it with?
> Natal: By myself, you know what I mean, I don't need nobody else.

(Recorded conversation, Govt. Ex. 104-A.)

> Feliciano: I was in the kitchen smoking marijuana with him.
> Govt.: And who is "him"?
> Feliciano: Natal. Sorry.
> Govt.: And what were you talking about?
> Feliciano: I started asking him questions why is he being investigated, why his name is coming up constantly, and he broke down on me. He got on his knees, hold me by my waist and told me he's sorry, he sorry. He said, "I'm sorry, I'm sorry, I ain't meant to do that."
> Govt.: He said I'm sorry, I'm sorry, I didn't mean to do that?
> Feliciano. Correct.
> Govt.: What was he talking about?
> Feliciano: About the fire.

(Trial Tr. at 2382–83.)

> Vega, referring to a $25,000 reward told Natal:

> "you gotta trust me, my nigga. If . . . I wanted you, I would have got that $25,000 shit that they go on the flyers for that fire shit. . . feel me? And I woulda got you caught for drugs and shit, feel me?" Natal replied: "you good[.]"

2

(Recorded conversation, Govt. Ex. 127-A.)

The Court's Ruling on Mr. Morales's motion for a new trial explained:

[T]he jury was never specifically informed that they could not consider Natal's confessions with respect to the charges against Mr. Morales.  The jury was instructed that the Government needed to prove that Mr. Natal committed the fatal arson in order for them to return a guilty verdict on the accessory after the fact charges.  Thus, these charges necessarily required the jury to consider Mr. Natal's guilt in the context of returning a verdict against Mr. Morales, which would exacerbate the risk that the jury would improperly consider evidence admissible only against Mr. Natal in the context of these charges. . . . Because there was a significant risk of spillover with respect to Mr. Natal's confessions, and because these confessions represented such compelling and significant evidence with respect to the arson, the Court concludes that the admission of this evidence without a specific instruction that the jury could not consider it against Mr. Morales resulted in material spillover prejudice to Mr. Morales on the accessory after the fact charges, warranting a new trial.

(Ruling Post-Trial Mots. at 26–27.)

In so ruling, the Court assumed, absent argument from the Government to the contrary, that these admissions would not have been admissible against Mr. Morales as to Counts Six, Seven, and Eight had the two defendants been tried separately.  Although Mr. Morales did not previously raise with any specificity the admissibility of the admissions against him as to the accessory after the fact counts, he did flag the issue more generally, and the Government failed to offer an adequate response.

For example, Mr. Morales's Motion [Doc. # 48] for Severance argues that the "alleged statement that Natal made during recorded conversations with a government informant . . . [a]rguably . . . would not be admissible against Mr. Morales if he were tried separately from Mr. Natal" and that "[t]he potential exists" that such evidence could be "improperly considered by the jury in determining Mr. Morales' guilt or innocence"

3

(Mot. Severance at 4).  Although Mr. Morales failed to elaborate on this argument or to specify on which counts the "spillover evidence" was likely to prejudice Mr. Morales, the issue was nonetheless raised.  The Government's response, while addressing the admissibility of the evidence on the conspiracy count, neglected the accessory after the fact counts.[1]  (*See* Gov't Obj. Severance [Doc. # 53] at 17–19.)

Similarly, in Mr. Morales's Motion [Doc. # 211] for a New Trial, he contended that "there [wa]s a substantially [sic] likelihood that the jury considered [Mr. Natal's three confessions as] evidence against Morales instead of assessing Morales' culpability based solely on his own acts, statements, and conduct," but he did not explicitly contend that the confessions would have been *inadmissible* against Mr. Morales had he been tried separately.  (Mot. New Trial at 36.)  In response, the Government did little more than quote the Court's prior statement (in the Ruling on Mr. Morales's Motion for Severance) that Mr. Natal's confession "would likely be admissible [against Mr. Morales] *as evidence to prove the existence of the narcotics conspiracy*."  (Gov't's Resp. Post Verdict Mot. [Doc. # 39] at 39 (quoting Ruling Mot. Severance at 4) (emphasis added).)  But, because that statement related only to the admissibility of Mr. Natal's confessions on the conspiracy count, the Government's response was wholly inadequate.

---

[1] With respect to Mr. Natal's confession to Mr. Vega, the Government contended that the statement was "an admission by a party-opponent, and as such [would] be offered as proof of Natal's participation in the arson, pursuant to Federal Rule of Evidence 801(d)(2)(A)"  (Gov't Obj. Severance at 19).  Because Mr. Natal's statement would be admissible as a statement of a party opponent only as to him, this argument fails to address the admissibility of the evidence against Mr. Morales on Counts Six, Seven, and Eight.

Due to the parties' failure to squarely address the admissibility of Mr. Natal's confessions against Mr. Morales on the accessory after the fact counts, the Court did not previously consider the admissibility of the statements under Fed. R. Civ. P 804(b)(3).  It considers it now.

## II.    Legal Standard

Although "[n]either the Federal Rules of Criminal Procedure nor the Local Criminal Rules expressly provide for reconsiderations," it is permissible to file reconsideration motions in criminal cases and such motions are governed by the same standard applicable to the equivalent civil filing.  *United States v. Reyes*, No. 3:10-CR-120 (VLB), 2013 WL 1882305, at *1 (D. Conn. May 3, 2013).

Motions for reconsideration require the movant to set "forth concisely the matters or controlling decisions which [the movant] believes the Court overlooked in the initial decision or order."  D. Conn. L. Civ. R. 7(c)(1).  The Second Circuit has explained that "[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18B C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 4478).  This standard is "strict," however, and reconsideration should be granted only if "the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  If "the moving party seeks solely to relitigate an issue already decided," the court should deny the motion for reconsideration and adhere to its prior decision.  *Id.*

5

### III.    Discussion

The Government urges the Court to find that Mr. Natal's admissions would have been admissible against Mr. Morales as statements against penal interest under Fed. R. Ev. 804(b)(3) had the two defendants been tried separately, such that no limiting instruction was necessary with regard to the admissions.  (Gov't Mem. Mot. Recons. at 6.)  Defendant's argument is two-fold.[2]  He argues first that Mr. Natal's confessions are not admissible because: they are not relevant to two of the three elements the Government must prove for the crime of accessory after the fact[3] and their limited relevance is outweighed by the substantial risk of unfair prejudice such evidence creates; and there are not sufficient indicia of trustworthiness for the statements to be admitted under Rule 804(b)(3).  (Def.'s Opp'n Mot. Recons. [Doc. # 265] at 9–12.)  In the alternative, Mr. Morales contends that even if the evidence is admissible, limiting instructions were necessary with respect to elements two and three.  (*Id.* at 12.)

---

[2] Although Mr. Morales's opposition was untimely, the Court will consider its substance, absent objection by the Government.

[3] In order to prove the crime of accessory after the fact, the Government needed to prove three elements beyond a reasonable doubt:

> (1) First that on or about the date charged (March 9, 2011) the crime of arson resulting in death, as alleged in Counts Three, Four and Five was committed by Hector Natal;
>
> (2) Second, that the defendant MORALES had knowledge of the commission of that crime and Natal's participation in it; and
>
> (3) Third, that with such knowledge, MORALES in some way assisted Natal with the specific purpose or plan to hinder or prevent Natal's apprehension, trial, or punishment.

(Jury Instructions [Doc. # 191] at 44.)

## A. Rule 403 Balancing

Under the Federal Rules of Evidence, evidence is only admissible if it is relevant; that is, if it "has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Ev. 401. However, even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Mr. Morales contends that although Mr. Natal's statements are only relevant to element one, their "overshadowing nature" creates a substantial "risk that jurors would consider them when reaching a decision on elements two and three" such that they should either not be admitted or be admitted with limiting instructions. (Def.'s Opp'n Mot. Recons. at 9–10, 12.)

Under the Federal Rules of Evidence, limiting instructions are appropriate "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose." Fed. R. Evid. 105. The Advisory Committee Notes explain:

> A close relationship exists between this rule and Rule 403 which requires exclusion when "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." The present rule recognizes the practice of admitting evidence for a limited purpose and instructing the jury accordingly. The availability and effectiveness of this practice must be taken into consideration in reaching a decision whether to exclude for unfair prejudice under Rule 403.

*Id.* Thus, the Rules contemplate that unfairly prejudicial evidence will not be admitted unless the danger of prejudice can be mitigated by a limiting instruction. *See United States v. Figueroa*, 618 F.2d 934, 945–46 (2d Cir. 1980) ("Evidence that might be admissible under Rule 403 in a trial of one defendant is not inevitably admissible in a joint trial.  In some situations the danger of unfair prejudice to co-defendants may be so great that the prosecution must be put to a choice of forgoing either the evidence or the joint trial. . . .  As with the balancing required in the trial of one defendant, admissibility of prior act evidence in a joint trial requires consideration of the likely effectiveness of the cautionary instruction that tries to eliminate the prejudice to the co-defendant by limiting the jury's consideration of the evidence to the defendant against whom it is offered."); *see also Huddleston v. United States*, 485 U.S. 681, 691 (1988) (finding that unfair prejudice can be mitigated by limiting instructions).  The unstated corollary is that limiting instructions are not necessary unless the court determines that there is a danger of unfair prejudice.

No such danger exists here.  While Mr. Morales is clearly correct that Mr. Natal's statements are relevant only to element one (whether Mr. Natal committed the arson), Mr. Morales fails to explain why such evidence, which is obviously not relevant to elements two (knowledge of the arson) and three (assistance to Natal), would unfairly prejudice the jury in its deliberations on elements two and three.  The Court does not understand, and Mr. Morales does not explain, how a jury's deliberations regarding Mr. Morales's knowledge and actions would be unfairly prejudiced by evidence regarding Mr.

Natal's actions.[4]  Absent such prejudice, Rule 401 presents no barrier to the admission of Mr. Natal's statements, and limiting instructions are unnecessary.

### B.  Rule 804(b)(3) Hearsay Exception

As both the Government (Gov't Mem. Mot. Recons. at 6) and Mr. Morales (Def.'s Opp'n Mot. Recons. at 11) acknowledge, all three of the contested statements are hearsay under Rule 801 because they are out-of-court statements made by Mr. Natal, offered for the truth of the matter asserted.  The Government argues, however, that the statements are admissible under a hearsay exception.   Rule 804(b)(3) provides that an out-of-court statement of an unavailable declarant[5] offered for its truth is admissible if it is a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.

---

[4] In the Court's Ruling on Post-Trial Motions, the Court recognized that if Mr. Natal's confessions, which were introduced as evidence against Mr. Natal and not as evidence against Mr. Morales, were improperly considered by the jury in reaching a verdict against Mr. Morales, Mr. Morales would be unfairly prejudiced. (Ruling Post-Trial Mots. at 26–27.)   However, the Court's discussion was explicitly premised on the understanding that Mr. Natal's confessions would not be admissible against Mr. Morales with regard to Counts Six, Seven, and Eight, had the two defendants been tried separately, a premise the Court now reconsiders.

[5] Because Mr. Natal, invoked his Fifth Amendment right not to testify, *see* Trial Tr. at 3264–66, he is considered "unavailable," *see United States v. Salvador*, 820 F.2d 558, 560 (2d Cir. 1987) (holding that a witness was "unavailable" for purposes of Rule 804 when he invoked his Fifth Amendment); Fed. R. Evid. 804(a)(1).

Fed. R. Evid. 804(b)(3). The Court will limit its analysis to the second prong because Mr. Morales appears to concede that Mr. Natal's statements satisfy the first prong. (*See* Def.'s Opp'n Mot. Recons. at 11.)

With respect to the second prong, Mr. Morales maintains that Mr. Natal's statements were not trustworthy because he may have been bragging to impress Mr. Vega, he may have said whatever he needed to in order to ensure the continuation of his lucrative drug operation, and he was smoking marijuana when he spoke to Ms. Feliciano. (*Id.* at 11–12.) The second prong of Rule 804(b)(3) requires hearsay statements to be "supported by corroborating circumstances that clearly indicate [their] trustworthiness." Fed. R. Evid. 804(b)(3)(B). "Corroboration of the trustworthiness of the statement could mean that the district judge is to require corroboration of the declarant's trustworthiness, focusing on declarant's reliability when the statement was made, or corroboration of the truth of the declarant's statement, focusing on whether the evidence in the record supported or contradicted the statement, or both." *United States v. Salvador*, 820 F.2d 558, 562 (2d Cir. 1987) (internal citations omitted). The Second Circuit requires corroboration of both. *Id.*

Mr. Morales does not appear to contest that Mr. Natal actually made the statements attributed to him, arguing instead that the statements are not trustworthy because Mr. Natal had reason to lie when he made them. (*See* Def.'s Opp'n Mot. Recons. at 11–12.) The Court is not persuaded by this argument. All three statements, which incriminated both the declarant and the defendant, were made to a person the declarant believed was an ally, circumstances the Second Court has stated indicates reliability. *See United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) ("In . . . assessing

10

[trustworthiness], we have noted that '[a] statement incriminating both the declarant and the defendant may possess adequate reliability if . . . the statement was made to a person whom the declarant believes is an ally, and the circumstances indicate that those portions of the statement that inculpate the defendant are no less reliable than the self-inculpatory parts of the statement.'" (quoting *United States v. Saget*, 377 F.3d 223, 230 *supplemented*, 108 F. App'x 667 (2d Cir. 2004))).

As in *United States v. Matthews*, 20 F.3d 538, 546 (2d Cir. 1994), the confessions here "were not made to law enforcement authorities, were not made in response to questioning, and were not made in a coercive atmosphere." *Id.* (holding that the confession in question was sufficiently trustworthy). Mr. Natal's statement to Ms. Feliciano was a statement to a girlfriend, "an intimate and confidant," in the private recesses of her sister's home. *Id.* None of the statements were made under coercion or as part of an "attempt to curry favor with authorities. Indeed, when he made the statement[s] to [Mr. Vega and Ms. Feliciano], [Mr. Natal] had no reason to expect that his admission[s] would ever be disclosed to the authorities." *Id.*

Mr. Natal may have been, as Mr. Morales suggests, bragging or otherwise lying, and those are contentions that Mr. Morales was free to argue to the jury; "but as 'reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true,'" *Gupta*, 747 F.3d at 129 (quoting *Williamson v. United States*, 512 U.S. 594, 599 (1994)), the Court finds there were sufficient indicia of trustworthiness here to satisfy Rule 804(b)(3)(B).

### C.  Confrontation Clause

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In the watershed case of *Crawford v. Washington,* 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause prohibits the admission of most[6] "out-of-court statement[s] made by a declarant who does not testify at trial, where the statement[s] [are] deemed 'testimonial.'"  *United States v. Burden*, 600 F.3d 204, 223 (2d Cir. 2010) (citing *Crawford*, 541 U.S. at 61–62).  Reasoning that "witnesses" against the accused are those who "bear testimony," and defining "testimony" as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact," the Supreme Court differentiated between "[a]n accuser who makes a formal statement to government officers [who does bear testimony] [and] a person who makes a casual remark to an acquaintance [who] does not [bear testimony]."  *Crawford*, 541 U.S. at 51.  Although the Supreme Court left "for another day" the task of "spell[ing] out a comprehensive definition of 'testimonial[,]'" it stated that "at a minimum" the term covers "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations."  *Id.* at 68.

The Second Circuit has clarified that recorded conversations between a cooperating witness and a defendant are not testimonial.  In *United States v. Burden*, Defendants David Burden, Kelvin Burden, and others were convicted of participating in a

---

[6] Hearsay statements are not prohibited if "the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant concerning the statement."  *United States v. Burden*, 600 F.3d 204, 223 (2d Cir. 2010) (quoting *Crawford*, 541 U.S. at 61–62).

racketeering enterprise engaged in the distribution of cocaine. 600 F.3d at 211. The defendants subsequently challenged their convictions, raising various objections including an assertion by Defendant Kelvin Burden that the district court erred in admitting a recording taken from a wire worn by a government cooperating witness. *Id.* at 223. In rejecting Kelvin's objection, the Second Court explained:

> [T]here is . . . no Confrontation Clause problem with respect to the statements on the recording by anyone other than [the cooperating witness] himself, as he was the sole declarant aware that any recording was being made. With respect to those others, it is difficult to imagine how a *Crawford* violation could arise, for, as to them, [the cooperating witness] was simply a tool for bringing the recording device within range of the conversation to create an audio picture of the event.
>
> But Kelvin objects to utterances by [the cooperating witness] himself. In particular, he objects to an exchange in which [the cooperating witness] asks "[W]hat are you charging for a 14?," David Burden replies "550," and [the cooperating witness] whistles, communicating his impression that this is a high price. Assuming for present purposes that this constitutes a "statement," does [the cooperating witness's] awareness that the statement is being recorded for a future criminal trial make the statement testimonial? We hold that the answer is no.

*Id.* at 223–24. From *Burden*, it follows that there is no Confrontation Clause problem with respect to either Mr. Vega's or Mr. Natal's recorded statements.

There is also no Confrontation Clause problem with respect to Mr. Natal's statements to Ms. Feliciano because they were also not testimonial. Unlike statements made at a preliminary hearing, before a grand jury, at a former trial, or during the course of a police interrogation, Mr. Natal's statements to Ms. Feliciano were not made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52 (internal

quotation marks omitted).  The statements were made in an emotional conversation between Mr. Natal and his girlfriend in the privacy of her sister's home.  They were not "testimonial" within the meaning of the Confrontation Clause.

All three of Mr. Natal's statements would therefore have been admissible against Mr. Morales as to Counts Six, Seven, and Eight had the two defendants been tried separately.

## IV.    Conclusion

Because the Court concludes that Mr. Natal's statements would have been admissible against Mr. Morales on Counts Six, Seven, and Eight had Mr. Morales and Mr. Natal been tried separately, and that limiting instructions were not necessary to prevent undue prejudice, the Court's statement to the contrary in its Ruling on Post-Trial Motions was clear error of law.  In order to remedy this error, the Court GRANTS the Government's Motion [Doc. # 260] for Reconsideration and vacates that portion of the Court's Ruling [Doc. # 257] on Post-Trial Motions granting Mr. Morales a new trial.  His conviction on Counts Six, Seven, and Eight are reinstated.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 21st day of October, 2014.