UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| UNITED STATES OF AMERICA | Criminal No. 3:12cr164 (JBA) |
|---|---|
| v. | |
| HECTOR MORALES | September 8, 2020 |

**ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Defendant Hector Morales moves through appointed counsel "to amend his sentence to 'time served' due to the 'extraordinary and compelling reasons' confronting the federal prison system created by the COVID-19 pandemic." (Mot. Release from Custody [Doc. # 349] at 1) ["Def.'s Motion"]. The Government opposes. ([Doc. # 353].) However, for the reasons that follow, Defendant's motion is GRANTED.

**I. Background**

Defendant Hector Morales was convicted by a jury of one count of conspiracy to distribute and to possess with intent to distribute narcotics, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), (b)(1)(D) and (b)(2), three counts of accessory after the fact to arson resulting in death, all in violation of 18 U.S.C. § 3, one count of witness tampering and aiding and abetting, in violation of 18 U.S.C. §§ 1512(b)(1), one count of conspiracy to tamper with witnesses, in violation of 18 U.S.C. § 1512(k), and one count of destruction and concealment of evidence, in violation of 18 U.S.C. § 1519. (Judgment [Doc. # 284] at 1.) He was initially sentenced to 174 months imprisonment on January 12, 2015. (*Id.*) However, upon appeal to the Second Circuit, Defendant's conviction was affirmed except for the count of destruction and concealment of evidence, which was vacated. (Mandate of USCA [Doc. # 331] at 1.) On August 3, 2017, Defendant was resentenced to a reduced 135 months of imprisonment and three years of supervised release. (Amended Judgment After Re-Sentencing [Doc. # 343] at 1.)

1

Defendant is currently incarcerated at Fort Dix FCI and is scheduled to be released from Bureau of Prisons ("BOP") custody on March 16, 2022. FIND AN INMATE, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/inmateloc/ (last accessed September 8, 2020). Defendant is 56 years old and "has several health issues that include Asthma, Type 2 Diabetes, and Hypertension,"[1] which form the basis for his Motion. (Def.'s Mot. at 3-4.) As of September 8, 2020, thirty-six Fort Dix FCI inmates and six staff members had tested positive for COVID-19. COVID-19, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last accessed September 8, 2020). All had recovered. (*Id.*)

The Court assumes the parties' familiarity with the ongoing COVID-19 pandemic and its spread from person-to-person, especially between those who are in close contact with one another. HOW COVID-19 SPREADS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last accessed September 8, 2020).

The Centers for Disease Control and Prevention ("CDC") warns that the following conditions cause people of any age to be at increased risk of severe illness from COVID-19: cancer, chronic kidney disease, COPD (chronic obstructive pulmonary disease), immunocompromised state from solid organ transplant, obesity (body mass index [BMI] of 30 or higher), serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies, sickle cell disease, and Type 2 diabetes mellitus. PEOPLE WITH CERTAIN MEDICAL CONDITIONS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed September 8, 2020). The CDC also warns that the

---

[1] Defendant moves to seal his medical records [Doc. # 351]. (Mot. to Seal [Doc. # 350].) No opposition has been filed. The Court finds that Defendant's privacy interests in his confidential medical information substantially outweigh the public's right of access to that document, and thus Defendant's Motion to Seal is granted.

following conditions *may* increase the risk for severe illness from COVID-19: Asthma (moderate-to-severe), cerebrovascular disease, cystic fibrosis, hypertension or high blood pressure, immunocompromised state from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines, neurologic conditions (such as dementia), liver disease, pregnancy, pulmonary fibrosis (having damaged or scarred lung tissues), smoking, Thalassemia, and Type 1 diabetes mellitus. *Id.* Moreover, "[a]mong adults, the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." OLDER ADULTS, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last accessed September 8, 2020).

Defendant submitted his request to the Warden at Fort Dix FCI for a reduction in sentence based on his concerns about COVID-19 on June 18, 2020. (Def.'s Mot. for Compassionate Release [Doc. # 347] at 2) ["Mot. for Release"]. On August 10, 2020, the Warden denied Defendant's request (Warden Denial Letter [Doc. # 352] at 2) and Defendant, through appointed counsel, filed his Motion for Release from Custody [Doc. # 349]. (Def.'s Mot.) The Government filed its opposition on August 19, 2020. ([Doc. # 353.])

## II. Discussion

Defendant moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides,

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Although incarcerated persons previously could only seek compassionate release from the BOP, the First Step Act of 2018 permits prisoners to seek relief from the federal courts upon satisfaction of the exhaustion requirements.

Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that

> (1)(A) Extraordinary and compelling reasons warrant the reduction; ...
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons." On March 26, 2020, pursuant to authority granted to him under the CARES Act, Attorney General Barr urged the BOP to "prioritize the use of your various statutory authorities to grant home confinement for inmates seeking transfer in connection with the ongoing COVID-19 pandemic," indicating that health concerns resulting from the pandemic may constitute "extraordinary and compelling reasons" justifying compassionate release. Attorney General William Barr, *Memorandum from the Attorney General to Director of Bureau Prisons* 1 (March 26, 2020).

Defendant argues that extraordinary and compelling reasons exist which justify his requested sentence reduction because there are "inadequate precautions [at Fort Dix FCI] to protect Mr. Morales" against coronavirus due to his age, asthma, hypertension and, most importantly, type 2 diabetes. (Def.'s Mot. at 4.) In his original *pro se* motion for compassionate release, Defendant also claimed that he is "on a breathing machine" and his

"safe and immune system have been weaken during this pandemic ,do [sic] to the side effect of [his] medication."[2] (Mot. for Release at 4.)

The Government does not dispute that his medical conditions qualify Defendant to seek compassionate release. However, the inquiry does not end there. The Court must also consider the factors set forth in 18 U.S.C. § 3553(a) and determine whether Defendant is a "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13; see 18 U.S.C. § 3582(c)(1)(A). The factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" and "the need for the sentence imposed . . . to protect the public from further crimes of the defendant."

Defendant was found guilty by a jury for helping his son, Hector Natal, escape detection by police after Mr. Natal set fire to a home that resulted in the deaths of three people. (Sentencing Transcript of January 8, 2015 [Doc. # 321] at 60-61.) He also assisted his son in selling drugs. (*Id.*) Defendant's son is presently serving a life sentence at Thomson USP in Thomson, Illinois. (FEDERAL BUREAU OF PRISONS.) Defendant acknowledged that "he was convicted of a serious offense, and is very remorseful[. H]owever, his sentence was not a 'death sentence,' nor is his offense 'worthy of death..[sic]'" (Mot. for Release at 3.) He argues that "his sentence will become a death sentence if he catches COVID-19, at FCI Fort Dix." (*Id.*) Defendant further maintains that he is "not a threat to society and [has] been around staff members and inmates without committing any violent offenses at FCI Fort Dix." (*Id.*)

The Government argues that the other § 3553(a) factors, particularly the severity of his crime, should preclude release. (Gov't Opp. at 9); U.S.S.G. § 1B1.13; see 18 U.S.C. § 3582(c)(1)(A). The Government emphasizes that Defendant's "crimes are not the kind that can be forgotten" and that Defendant would "unquestionably [] pose a danger to public safety

---

[2] Defendant's medical records, though incomplete, confirm all of the above conditions except the medication which purportedly causes a weakened immune system. The only medication listed on the most recent medical assessment is an inhaler, but only one page out of eight is included in the record.

if released." (Gov't Opp. at 9-10.) The Government does not identify anything in Defendant's prison record that suggests he is a continuing risk. At Defendant's resentencing, the Court noted that Defendant is "[b]y all reports, [] a model prisoner. He works regularly. He does not have any disciplinary conduct for five years. And this is the first time he's ever been in prison." (Gov't Opp. at 14.) *See also* (Presentence Investigation Report [Doc. # 283] at 18-19.) Moreover, his son, the impetus for Defendant's convictions, is presently serving six life sentences at a federal prison in Illinois and will never be released. (Gov't Opp. at 14.) Absent the presence of his son, it seems unlikely that Defendant will reengage in this type of criminal activity.

Based on this record, the Court concludes that compassionate release is appropriate. Defendant has undisputedly demonstrated extraordinary and compelling reasons justifying his release in light of his age, diabetes, hypertension, and asthma, as these conditions place him at higher risk for developing a severe case of COVID-19. *See United States v. Rivernider*, No. 3:10-CR-222 (RNC), 2020 WL 2393959, at *1 (D. Conn. May 12, 2020) (granting relief for a "54 year[-old man] with diabetes, heart disease and hypertension); *United States v. Williams*, No. 3:17-CR-121-(VAB)-1, 2020 WL 1974372, at *4 (D. Conn. Apr. 24, 2020) (granting compassionate release where defendant "suffers from asthma, hypertension, diabetes, and other health conditions that place him at greater risk from COVID-19"); *United States v. Colvin*, No. 3:19CR179 (JBA), 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020) (finding diabetes sufficient to warrant release as it is "a serious medical condition which substantially increases [the] risk of severe illness if [one] contracts COVID-19").

Defendant's compassionate release is consistent with the 28 U.S.C. § 3553(a)(1) sentencing factors. He has served 97 months, or seventy-two percent, of his 135-month sentence, minimizing disparities between him and other similarly-situated defendants. *See Rivernider*, 2020 WL 2393959, at *1 (granting compassionate release for a prisoner after only serving fifty percent of his sentence). While Defendant's crimes are very serious, his

clean disciplinary record in prison, combined with his lack of prior convictions and the permanent incarceration of his son, make apparent that he likely "is not a danger to the safety of any other person or to the community." 18 U.S.C. § 3582(c)(1)(A)(ii). Upon release, he plans to reside at home in New Haven with his remaining family, where he can self-quarantine. (Def.'s Mot. at 5.) In sum, Defendant has shown both that extraordinary and compelling circumstances justify his release and that the factors set forth in 18 U.S.C. § 3553(a) do not weigh against releasing him.

### III.   Conclusion

For the foregoing reasons, Defendant's Motions for Release from Custody [Doc. # 349] and for Compassionate Release [Doc. # 347] are GRANTED. Defendant's Motion to Seal [Doc. # 350] is also GRANTED. Defendant's sentence is reduced to time served. Defendant shall be promptly released to the home of his New Haven family, where he shall commence his three-year supervised release term with fourteen days of self-quarantine.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 8th day of September 2020.